UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ERNESTINE G. GEORGE                         CIVIL ACTION NO. 06-1015

versus                                      JUDGE STAGG

U. S. COMMISSIONER SOCIAL                   **Referred to:**
SECURITY ADMINISTRATION                     **MAGISTRATE JUDGE HORNSBY**

# MEMORANDUM RULING

**Introduction**

Ernestine George ("Plaintiff") has a high school education and past work experience that includes 30 years of employment at Lucent in jobs such as telephone tester, inspector, material handler and assemblyline worker. She alleges that she became disabled in 1998 due to diabetes and nerve damage to her upper torso. Plaintiff commenced this application in 1999. Twice an ALJ denied the claim only to have the Appeals Council vacate the decision and remand it for further proceedings. ALJ W. Thomas Bundy rendered the third decision, which is at issue in this appeal.

The Appeals Council denied a request for review. Plaintiff filed this civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). Both parties filed written consent to have a magistrate judge decide the case and, pursuant to 28 U.S.C. § 636(c) and the standing order of the district court governing social security cases, the action was referred to the undersigned for decision and entry of judgment. For the reasons that follow, the Commissioner's decision to deny benefits will be reversed.

**Summary of the ALJ's Decision**

The ALJ analyzed the case under the applicable five-step sequential analysis. He found that Plaintiff had not engaged in substantial gainful activity since her onset date (Step 1). He next found that Plaintiff has diabetes mellitus with neuropathy, chronic obstructive pulmonary disease, and depression, impairments that are severe within the meaning of the regulations (Step 2) but not severe enough to meet or medically equal a listed impairment (Step 3) that would require a finding of disabled without regard to the claimant's age, education or other vocational factors.

The ALJ next determined Plaintiff's residual functional capacity ("RFC"). He found that Plaintiff had the RFC for light work reduced by: no constant repetitive bending and twisting; a need to avoid heavy concentrations of dust, fumes and other pollutants; moderate limitations in the ability to understand, remember and carry out detailed instructions; moderate limitations in the ability to maintain attention and concentration for extended periods; and moderate limitations in the ability to set goals independently of others.

The ALJ then looked to testimony from a vocational expert ("VE") with regard to whether Plaintiff's RFC would allow her to return to her past relevant work (Step 4). The VE testified that a person with Plaintiff's RFC could perform Plaintiff's past work as inspector and assemblyline worker. The ALJ accepted that testimony and found at Step 4 that Plaintiff was not disabled.

**Issues on Appeal**

Plaintiff raises three errors in her brief: (1) The ALJ should not have evaluated Plaintiff's pain using the standards set forth in Hames v. Heckler; (2) The ALJ did not properly consider the effect of Plaintiff's pain in determining her RFC; and (3) The ALJ wrongfully ignored IQ scores and did not apply the listing for mental retardation.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**IQ Tests**

Listing 12.05C requires satisfaction of its introductory paragraph, which states that "mental retardation refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested ... before age 22." Arce v. Barnhart, 185 Fed. Appx. 437, 438 (5th Cir. 2006). Section C of the Listing adds the requirements of: "A

valid verbal performance, or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."

Dr. Susan Tucker, a clinical psychologist, performed a consultative evaluation. IQ tests administered during the evaluation yielded a verbal IQ of 69, performance IQ of 64, and a full scale IQ of 64. Plaintiff urges that the ALJ erroneously discounted those scores, and, therefore, wrongfully failed to apply Listing 12.05C.

An ALJ may disregard or discount low IQ scores where evidence shows that the claimant malingered or the claimant's demonstrated abilities are inconsistent with the score. See Muse v. Sullivan, 925 F.2d 785, 789-90 (5th Cir. 1991); Jones v. Barnhart, 2007 WL 628768 (W.D. Tex. 2007); and Armstrong v. Apfel, 1999 WL 1080322 (E.D. La. 1999).

The ALJ acknowledged the IQ test scores, but he noted that two other mental health professionals had evaluated Plaintiff after the testing and stated that she appeared to function in the borderline to average range of intellectual functioning. Also, Dr. Tucker wrote in her report: "Assessment of cognitive function yielded a profile which is believed to be of questionable validity due to her apathetic and depressed mood." Tr. 393. In her conclusion, however, Dr. Tucker wrote: "Overall, the results of the examination are considered to be valid." Tr. 394. Plaintiff makes much of the latter comment, but that comment was made in the general conclusion and not in the part of the report that specifically discusses the IQ tests. The specific comment about the IQ tests notes that the results were of questionable validity. The ALJ also noted that Plaintiff has a high school education in regular classes (and

she testified at one hearing that she took a year of vocational-technical education). Plaintiff has also worked for 30 years in semi-skilled to skilled employment. Her testimony at the hearings demonstrates that she is able to communicate as well as any other claimant. Nothing in Plaintiff's daily activities suggests mental retardation. Tr. 17, 464-65, 501. Furthermore, there is no evidence of deficits in adaptive functioning being manifested before Plaintiff was age 22. Given this record, the ALJ did not err in discounting the IQ tests; that decision is supported by substantial evidence. See Humphries v. Barnhart, 183 Fed. Appx. 887 (11th Cir. 2006) (substantial evidence supported finding that claimant did not meet the Listing because, despite an IQ of 65, she did not have deficits in adaptive functioning and had been a manager of a school cafeteria for 15 years).

**Pain Evaluation**

Plaintiff complains that it was error for the ALJ to evaluate her pain using the "constant, unremitting, and wholly unresponsive to therapeutic treatment" standard of Hames v. Heckler, 707 F.2d 162, 166 (5th Cir. 1983). The ALJ cited that standard in discussing when pain, in and of itself, can be "totally disabling." Tr. 19. He did not apply that standard in determining whether Plaintiff's pain otherwise gave rise to a severe impairment or other limitation on the ability to work, so there is no potential error with respect to this issue. The ALJ made clear in his decision that he believed Plaintiff "has pain in the upper torso." Tr. 18.

Plaintiff also argues that the ALJ did not properly include or consider pain, alone or in combination with other limitations, in assessing her RFC. The ALJ recognized that Plaintiff experiences "some degree of pain or discomfort at times of exertion." Tr. 19. He noted that Plaintiff had never required long-term narcotic medications and was able to dress herself, prepare meals and go shopping. He also wrote that Dr. Lieber, a treating physician, had stated that Plaintiff "should be able to work at a job that did not require moving her back and shoulders too much." The ALJ then concluded that the evidence failed to establish that Plaintiff's ability to function was so severely impaired by pain as to preclude work at the light level of exertion. He did, however, reduce that RFC in several respects, including a requirement of no "constant repetitive bending and twisting."

All of the questions to the VE, on which the Step 4 decision rested, were presented with the assumption of a limitation against "*constant repetitive* bending and twisting." Tr. 515-26 (emphasis added). Thus, it is critical that the degree of that limitation be based on substantial evidence. Records from Dr. Lieber, the treating physician whose opinion was said to have been relied upon in making this assessment, suggest a much greater limitation than set forth in the RFC.

The ALJ rested his decision in large part upon his statement that Dr. Lieber said Plaintiff could work in a job that did not require moving her back and shoulders "too much." Dr. Lieber wrote in a November 1998 letter that Plaintiff had definitely improved of late, "to such a degree that we hope to try a quiet job, perhaps a desk job, certainly one not causing

much of any motion to the back, as well as the upper extremities, other than, perhaps answering phones, and perhaps typing or writing at the desk!" Tr. 171. Dr. Lieber noted in a January 1999 report: "It's hard to twist and use her upper extremities." Tr. 166. In August 1999, Dr. Lieber commented on what he believed was an erroneous interpretation of his reports by Cigna Insurance. The insurer suggested that the evidence did not show a condition that would limit Plaintiff from working at her prior position as a warehouse worker. Dr. Lieber wrote that Cigna's conclusion was false because he had "noted on many occasions that this patient cannot perform work which causes her to twist or bend the spine, as well as her shoulders, due to exquisite pain and tenderness related to [medical problems]!" He added that the patient "could sit quietly at a desk, answer telephones, in all likelihood take notes, but absolutely no significant lifting, bending, stooping, twisting, turning!" Tr. 205. One month later, in September 1999, Dr. Lieber repeated that Plaintiff "should be able to perform many jobs, but not that which she was doing!" He again said that Plaintiff "probably can do quiet desk work without any lifting or much twisting or turning, etc., but certainly not with upper extremity activity that she utilized before!" Tr. 203.

The records discussed above, cited by Plaintiff, show that Dr. Lieber believed that Plaintiff could engage in "no" or "no significant" twisting or turning. The ALJ interpreted Dr. Lieber's evidence to say that Plaintiff could not do "too much" moving of the back and shoulders, and he then assessed an RFC to perform light work that involves bending and twisting so long as it is not constant and repetitive. That interpretation and assessment are

not supported by the records cited by Plaintiff, and the Commissioner has not referred to other records from Dr. Lieber that support the lesser limitation found by the ALJ.

Perhaps there is other evidence in the record on which the ALJ could have based his assessment of the bending/twisting limitation, but the court is not permitted to create or assume a rationale beyond that in the written decision.  "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000). See also Cole v. Barnhart, 288 F.3d 149, 151 (5th Cir.2002) ("It is well-established that we may only affirm the Commissioner's decision on the grounds which he stated for doing so."). Similarly, perhaps a VE would testify that Plaintiff could perform her prior work even with a greater limitation on twisting and bending, but we do not know because that question was not asked.

The Commissioner has not identified evidence from the treating physician, whose opinion was cited in the written decision as a significant basis for twisting/bending assessment, that would provide substantial evidence for the twisting/bending limitation that was assessed.  In these circumstances, the Commissioner's decision must be reversed pursuant to sentence four of 42 U.S.C. § 405(g).  A judgment will be entered granting that relief and remanding the case  to the agency for further proceedings.

On remand, Plaintiff and the agency may further explore the issues addressed herein or any other relevant matters.  See 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues relating to your claim may be considered by the administrative law judge

whether or not they were raised in the administrative proceedings leading to the final decision in your case."). <u>See also</u> Social Security Law and Practice, § 55:74 (there is ordinarily "no limit on a claimant's supplementing the record on remand" after a sentence four or sentence six remand). A judgment consistent with this ruling will be entered.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 20th day of August, 2007.

                                            MARK L. HORNSBY
                                      UNITED STATES MAGISTRATE JUDGE